Case No. 22-5080 et al. Stephen M. Greenbaum, on behalf of himself individually and as administrator of the estate of Judy Shoshana Lillian Greenbaum v. Islamic Republic of Iran et al. Mr. Fred Rosselli for the et al. Mr. Houdat for the Interapolis United States of America. Good morning, Your Honors. I'm asked to reserve four minutes for rebuttal. May it please the Court. TREA, the statute at issue here, clearly and unequivocally waives the United States' sovereign immunity. The statute only applies to blocked assets that are assets that have been seized or frozen by the United States. By its plain text, it applies in every case and notwithstanding any other provision of law. It very carefully limits the United States' ability to immunize a small category of property and only if certain requirements are met. Allowing the United States to invoke its own sovereign immunity to otherwise immunized assets would render the statute ineffective. In an attempt to avoid this absurd result, the United States has invented the possession versus no possession distinction and read it into the statute. As this argument goes, assets that are possessed by the United States are covered by sovereign immunity, whereas assets that are possessed by others are not. And this gives the statute independent meaning as far as the United States is concerned. It's because I think the writ of attachment has a different object. Does it not, if it's possessed by the United States, the writ of attachment gets served on the United States? If it is, say, a bank is just, there's some funds that are frozen pursuant to executive order or regulation by the bank. And if you wanted to get a writ of attachment for those, would it not be that the bank would be the object of the writ of attachment? There are certainly circumstances where other entities or people would ostensibly hold or possess the property that would be subject to a writ of attachment. I'm actually asking a more formal procedural question. I'm sorry. That is the person, the entity named in the writ of attachment on whom it is served and on whom it is operating, I assume, would be the bank. In the second situation, I hypothesize not the United States government, even if it's a federal directive or regulation that has caused the asset to be frozen? That is correct. In circumstances where a bank account is frozen, a bank account is held at Bank of America, for example, the writ will be served on Bank of America and not on the United States. But it's not really all that fictional. I mean, that just is, if sovereign immunity applies when the government would be a defendant, not when it's not. It's fictional insofar as the statute very clearly applies in circumstances where the United States possesses property. And I think it's important— That does not depend on whose property it is. I'm sorry? It depends on whose property it is. It would need to be Iran's property, but in circumstances where the United States happens to possess that property, the statute very clearly applies. If the United States possesses that Iranian property? Correct. Okay, well, we don't know if it's Iranian property. There's an issue in the other proceeding. That's correct. There is an open question as to whether this property is actually Iran's or not. Why should we proceed with your— For the purposes of this case, though, the United States has conceded that at the point when it took the property— They conceded, but that doesn't help them or help you. You're familiar with the Heiser case, right? I am, correct. Okay, so let me just read one sentence. Whether plaintiffs can attach the contested accounts depends on whether those accounts are the, quote, property, close quote, or, quote, blocked assets, close quote, of Iran. Correct, and when the United States seized these assets, there was no question that this was property of Iran. The United States has conceded that. This is all about whether you can attach. I'm sorry? This is about whether you can attach, not whether the United States seized. The statute only applies to property that the United States has seized or frozen. All Iranian property that is seized or frozen. That's correct, Your Honor, and what I'm trying to— Why would we make an assumption, proceed on a case that could be an advisory opinion, when the matter is going to be resolved in the companion case? It would not be proceeding on an assumption, Your Honor. Your Honor, when we submitted our initial application for the risk of attachment, we demonstrated satisfactory to Judge Lampart that these were Iranian assets. And when the United States moved to quash, they said, for purposes of this motion, we are going to agree that when we seized the property, when the United States seized the property, the Iranian government had an ownership interest in that property. And so we had no obligation at that point, I think, having already satisfied Judge Lampart that this was Iranian property when we made our initial motion, and then officially approved when the issue was no longer in dispute. So it wouldn't be an advisory opinion. At this point in time, we've demonstrated that the property was Iranian. And you've demonstrated that the United States didn't object to that assumption. Well, the district court so ruled as well. The district court so ruled, that's right. So ruled what? Ruled that the property was Iranian, that there was an Iranian ownership interest in the property. Because when the property was seized, it was owned by the Islamic Revolutionary Guard club source. And that was the basis of our initial motion. Was that binding in the forfeiture proceeding? The United States has alleged in the forfeiture proceeding that it was Iranian property. There is another... There's another party. There's another party who's disputing that. But for our purposes, I think there is a binding, an initial binding, that this is Iranian property when it was seized, and that therefore the statute applies, but for the fact that the United States has claimed, because it is in possession of the property, it's subject to the United States' own sovereign immunity. Don't think we should wait on the forfeiture action? The problem is, Your Honor, is that... Because you have a notice of a right to intervene yourself and press these claims, too. Excuse me, I'm sorry. You have a notice of a right to intervene in that proceeding and press the claims? Correct. And our claim would be much stronger in that proceeding if we go in there with the writs that we have, right? Because we would then have a property interest that would be different than just a general unsecured credit. Well, if you intervene now, you will go in there with the writs in hand. That's a step that has not been taken yet, given the posture of this case. One of the options... They have the writs in hand. They've been issued. We have the writs in hand. They were issued. They are now a quash. Right. So one of the options that we have, in the event that the court was to vacate the order quashing the writs, would be to go back down. There might be some additional litigation that would need to happen in front of Judge Lampard, but then ultimately we could, if we do still have the option, to go into the forfeiture action and enforce the writs there. I do want to return to this point about... Wait one second. When you do that, it will still be the burden of the forfeiture court for Judge Friedman to decide whether the assets are those of Iran or of Fujairah, as well as the other parties. Judge Friedman would still be able to hear whatever evidence comes in and decide whether or not the property is Iranian. But again, as for the current posture of our case, we have established that it's accurate to Judge Lampard that the property is Iranian, and that is an issue that the United States did not raise... I don't understand how it's going to help you in the forfeiture proceeding when the matter is going to be resolved in OVA. Because we would have our writs. And our writs create a property interest that's different than if you just went in there... It's a property interest that's contingent on the outcome of the ownership dispute. Of course. But it's still, in the event that we prevail and we prove off that these assets are in fact Iranian, having the writs would be very important because it would establish a concrete property interest... Are you a party in the forfeiture proceeding? Not yet, but we have reached an agreement with the United States prior to their motion to quash, recognizing the importance of deciding whether or not the writs were a valid issue, that we are trying to intervene to file proofs of claim or notice of claim. And I forget exactly what they're called in the forfeiture action. It's being held in abeyance pending resolution of these issues. So while we have not yet intervened in those forfeiture actions, because we haven't needed to, we do still have the ability to do so in the event that the court vacates the decision to quash the writs. If we were to grant your appeal, overturn the quashing of the writs, and in that way reinstate, in some sense, the Lamberts decision as to this being Iranian property, and if Judge Friedman were to decide it wasn't Iranian property, whose property decision controls? It's important to understand the posture. We were at a very early stage here when the United States moved to quash. So there are additional issues that could be litigated, and I think in that scenario, if we were to go in front of Judge Friedman, and he held a trial, or there was some additional record, and he ultimately concluded that this was not Iranian property, then we would lose. Even if you win your case here and go in there with your writs of attachment revised? Correct. I don't view a decision here vacating the motion to quash to be a judicial blessing, if you will, of the finding of the Iranian government that was necessary to issue the writs. So if Judge Friedman's decision is going to control, then going in with writs based on a fact finding that, in other words, the best contingent, it essentially means the Iranian enlist Judge Friedman says otherwise. That's the most you'd be going in with. I'm not quite sure how you're better off going in with writs of attachment that really have no power. Their force is going to depend entirely on what Judge Friedman says about them being Iranian property. Because under forfeiture law, and we have responses to this, where everyone's viewed as a concession, under forfeiture law, ordinarily, a general unsecured creditor does not have standing to contest forfeiture as an innocent owner or otherwise. So while we think that TRIA might address those issues, that's an open question that has not been resolved by any. Certainly not by this court. By no other court that I'm aware of. And so going in there with the writs is in my mind. I guess what I'm trying to understand, and I'm not an expert in this area at all, is if you go in there with a writ that's predicated on this being a fact finding that this is an Iranian property, but knowing that as a matter of law that fact finding will evaporate if Judge Friedman decides the other way, then with that evaporation will go your writ and you'll still be standing there as a general unsecured creditor. Because your writ is predicated on a factual error that you have conceded will be overridden by Judge Friedman's decision. So I'm not sure how it gets you in any better position. In your scenario, Your Honor, it doesn't matter. I want you to think of a different scenario. You vacate Judge Lankford's decision quashing, so we go into the writs, and then we prove up that this is Iranian property. We have now established that this is Iranian property, and therefore it's subject to TRIA, and we have writs. So we can establish that we are not simply general unsecured creditors. We have a concrete property interest. Now, in a scenario where you vacate, we go back down, we go in front of Judge Friedman because our time to do so has not expired, he could say, well, I don't really care if this is Iranian property or not. You're a general unsecured creditor. You don't have standing to challenge forfeiture, But Judge Friedman will have long since granted you intervention already. I'm sorry? Judge Friedman will have already granted you intervention, which makes you a party, and your standing won't evaporate upon his decision on the merits. There's no guarantee that he would grant us the intervention motion. One of the objections might be you should not allow them to intervene because they are general unsecured creditors, and therefore they don't have standing to challenge forfeiture. And so having the risk is essentially a ticket into the forfeiture action, one of a few different tickets that I think we would want. If the government were to agree not to oppose your intervention motion and forfeiture action, would that take care of the issue? I don't think so, Your Honor, because it's at least partially an Article III standing question, so I don't know that they can concede that we have standing in the forfeiture action, so I wouldn't be prepared to rest on that, even if they were willing to. But your standing could also rest, at least you have an argument, that your standing would rest on TRIO. If you affirm Judge Lampard, we would go in and say that the general unsecured creditor general rule is TRIO. Right. But, again, having the risk would allow us to avoid that. Should the district court have addressed sovereign immunity before this forfeiture argument issue was dealt with? Which district court? Friedman. The proceedings were in front of Judge Friedman. We had a case that was long pending in front of Judge Lampard, and so Judge Lampard was the judge who issued the risk, and the United States intervened and went to caution there. So, again, in discussion with the United States, we decided that it made more sense from a judicial resources standpoint to allow Judge Lampard to decide the underlying validity of the risk, at least insofar as the United States sovereign immunity is concerned, and that was a gaming issue that we wanted to address first, and that is certainly a jurisdictional question and one that, you know— Well, in terms of your judicial economy, you're asking us to decide a series of questions, one of which will matter if it's not Iranian property. I don't necessarily disagree with that, Your Honor, but I think in any instance where you have a final decision, that is true, right? If you vacate a decision granting a motion for some re-judgment, you don't know whether the plaintiffs will be able to prove up their case when it goes back down, but so that's something that's done all the time, and I view this as somewhat similar to that in the sense of there is a gaming jurisdictional challenge raised to the validity of the risk, and because of that, we're here. So I think it would be an odd result, respectfully, if because there are additional questions that need to be resolved, we somehow lose this appeal just because Judge Lampard decided that the sovereign immunity applied, which is obviously a decision that we disagree with. Do you know what the timeframe is for Judge Friedman to act on this sort of basic question, or whatever briefing? I do not, Your Honor. The government certainly might have more insight into that. All I can say is we certainly monitor that document, and there's been no activity, so I don't even know if this party who has come in to challenge the Iranian government's ownership is facilitating our case or not. Is this other party claiming that they own the oil? Is that what's going on? It wasn't totally clear from the briefing. We don't know that either. I don't know for sure. They certainly claim that it's not Iranian ownership, whether they have a charter or the actual owner, or what interest they're planning on. Any other questions? I thought you implied earlier that there was a deadline for your intervention. I'm sorry. I thought you said earlier or implied there was a deadline for your intervention in the forfeiture court. There is, and if you bear with me, I can direct you to where it is in the record. I believe under the rules applicable to forfeiture, the United States has the ability to grant extensions of the time to file a notice of claim or an answer. If you look at JA233, that's the notice that the United States filed extending our claim deadline. That goes on to 234. At JA236, Judge Friedman entered a minute order requesting some additional information. Then JA238 to 239 is a United States response. And then after that response, there is no further inquiry from Judge Friedman. Just a little bit about your argument on sovereign immunity. It needs to be unequivocally expressed. That's correct. It does need to be unequivocally expressed. And what I was trying to say before is with respect to the possession, no possession issue, I think it's important to understand how TRIA works. TRIA says that blocked assets shall be subject to execution. And blocked assets are defined as any asset seized or frozen by the United States. So if you just take even just that first piece, an asset that has been seized by the United States shall be subject to execution, that clearly and unequivocally applies to assets that are within the United States' possession. And so I think when you layer that on top of all the other arguments we've made in our papers, arguments about the pervasive federal regulations that apply to assets that have been frozen, the arguments with respect to the language in TRIA, it applies in every case. It applies notwithstanding any other provision of law. All of those provisions make clear and unequivocal the Congress' decision to waive the United States' sovereign immunity, which under a Supreme Court precedent does not need to use any specific types of magic words. I don't think it's quite that clear. You put it this way. If this is 201A in TRIA, if that is a waiver of sovereign immunity, I'm looking for what possible function can be left for 201B2. So I think the way this statute works is that 201A establishes the scenario where the property is subject to attachment. And that would clearly include situations where the United States is in possession of Iranian property. The way the statute then works is it says, and except as provided in subsection B, which is then the presidential waiver provision of the statute, which we rely on. B doesn't apply in the exception area, B2. There's a general rule that the property is subject to execution. B1 is a waiver. If these requirements are satisfied, the president has the authority in that scenario to protect or immunize property. B2 is the exception to the exception. So even if B1 is met, if B2 is met, the president cannot waive. And again, this clearly, clearly applies to property that's in the United States. I see your point. So let's go back to A for a moment. We have this question of what is a provision of law. And there's a First Circuit case, I think it is, that says, well, a provision of law is flexible enough to include a common law doctrine, something other than an actual provision of law statute. And I think a couple of cases the other way on that. But in any event, the dictionary definitions from the founding to the present would suggest that we're talking about statutory. I think that's not respectfully the conclusion that this court reached in the King case. In that scenario, the King versus Doyle case, in that scenario, there was an identical, it was a claim against guilt for the time. You need to bring a claim within a certain period of time. And if it's not withstanding any provision of law, you need to bring this claim within, I forget, 30 days, 90 days. The plaintiff or the petitioner in that case brought the claim within 31 days and argued that equitable enlargement could be applicable here. And this court, relying on the notwithstanding laws, said no. Congress, in clear language, made clear that this statute applied notwithstanding any other doctrine, including the doctrine of equitable enlargement. Or we did, you're saying, from provision to doctrine. I'm sorry? We lighted from provision to doctrine, you're saying, in that case? In that case, I can give you the exact quote if I don't want to. Notwithstanding any other provision of law, a couple of, what, 530 days, relying on the clear and emphatic language of the statute, this is your brief. Correct. The court held that the litigant could not seek equitable enlargement of the limitations free because Congress left no doubt as to the mandatory nature of the time limit. Correct. It didn't, so, okay, so you're saying it's your addition to that, not disputing it, that they said that with regard to something which was not a statutory provision. Equitable enlargement is a common law doctrine, just as sovereign immunity is. It's not a statutory provision. This court held that the language was clear and emphatic. There are other cases. Notwithstanding any other provision of law, definitely can't apply to the Constitution, right? The statute can't apply to the Constitution. The statute cannot override the Constitution. The statute cannot override the Constitution. And if there were decisions from this court recognizing that sovereign immunity principles and our very strict rules of statutory construction are rooted in the separation of powers under the Constitution, then the notwithstanding clause would not override those. I'm going to put it this way, because I'm not familiar with the cases that you're talking about. If sovereign immunity was part of the Constitution, if it was inviolable as part of the Constitution, then the statute cannot override it. I don't know what you mean by inviolable, but if the judicial doctrine is requiring very clear statements, sovereign immunity and judicial, which are meant to ensure that only the political branches have sovereign immunity and not the courts, if those are rooted in separation of powers, then the notwithstanding provision can't override that doctrine, even though it's not statutory. Well, I don't know what you mean by that. I mean, certainly, regardless of the source of the United States sovereign immunity, it is subject to being overridden by a statute that happens all the time. Of course. What I'm saying is, sorry, I was trying to be more careful here, and I guess I wasn't. This sovereign immunity principle, this maxim of requiring very clear and direct language in a statute, courts have said that. It's not in the text of the Constitution. But, of course, it's said that that demands that there be such explicit and unquestionably clear waiver of sovereign immunity applied by courts as itself rooted in the separation of powers of the Constitution. And so the decision of whether sovereign immunity is waived or not in a statute, the analysis of that has constitutional roots. So it's more complicated. That's why I'm asking the question. I understand your question. If that's the point, then it does – is that still – can those principles be overridden by a notwithstanding clause like this? I apologize. No, I wasn't paying attention. We are not challenging that the waiver of sovereign immunity needs to be clear. And I forget the exact phrase. Clear and unequivocal. Our position is that it is clear and unequivocal. And so we're not relying on the notwithstanding clause or any of the other two provisions that we rely on in order to say, well, you don't need to find clear and unequivocal language because we have the notwithstanding clause. Our position is the notwithstanding clause coupled with the definition coupled with the presidential waiver is clear and emphatic. And so I don't think your honest question – But it's more than – we don't have principles like that. You have cases that you've found which are helpful to think about where common law principles or non-statutory principles have been held to be overridden by these clauses. But we're talking about something that's in a sort of a different league here. Are we not? Because of the constitutional implications of it? I respectfully don't agree with that. I think certainly the issue in front of us in that part and the way that this has been agreed is the notwithstanding clause can't waive sovereign immunity because provision of law should be read – Well, that's what he said, but that doesn't mean we have to say that. I think if provision of law is read the way this report read it and came, to include common law doctrines, then that is clear and emphatic language that applies to all common law doctrines, including the United States sovereign immunity. The government has an alternative argument about the license being an exception to TRIA. Do you have any comments there? Yeah, this certainly gets into the weeds of TRIA. I really don't fundamentally agree with the United States position. TRIA is very clear. There is a definition of locked assets followed by an exception, and then within the exception, again, is a carpet. So the definition of locked assets applies here. It's an asset that has been seized or frozen by the United States. The exception is certain licenses, and I want to get the language here correct, needs to be subject to a license issued by the United States government for final payment, etc. In connection with the transaction for which the issuance of such license has been specifically required by a statute other than the International Emergency Economic Powers Act. So what we have here is a situation where the property has been seized or frozen by the United States. It is subject to a license. The license that was in front of Judge Lampart has since expired. So at least as far as the record that was in front of Judge Lampart is concerned, there is no longer a valid license. And that license was not specifically required by a statute other than in IEVA, meaning the actual exception does not apply. So even though it's subject to a license, it is still considered a locked asset under the threshold definition because the license was not required by a statute other than IEVA. It was required by IEVA and then a whole host of regulations and executive orders. I hope that answers your first question. Yes. Any other questions? Yeah, I want to go back to King v. Gold for a minute. I'm not sure I understand now that I've looked at it more what you were saying about it. If I understand it correctly, the court held that the statutory time limit for filing suit could not be extended to a judge-made doctrine, right? That's correct. Okay, so that was to say the statute, as understandable, simply said that the statute takes precedence over a judge-made doctrine. What does that tell us at all about the current case? The statute took precedence over a judge-made doctrine because the time limit in the statute applied notwithstanding any other provision of law. So absent that language, equitable enlargement would have been available to the plaintiff the same as it is in any number of cases. But because Congress made that time limit superior, notwithstanding any other provision of law, it did not apply. And so here, TRIA applies, notwithstanding any other provision of law, which would include common law doctrine. So you're saying the doctrine of equitable enlargement, you're analogizing to the doctrine of judicial recognition of sovereign immunity. Correct. But sovereign immunity doesn't depend upon judicial recognition. It's a common law doctrine, same as equitable enlargement. It's not found in the statute. And the number of the case, really, from Judge Lampart, was over the definition of provision. Is provision broad enough to include common law doctrines? The answer is yes. We would have our fair and unequivocal waiver of sovereign immunity, in addition to the other arguments that we've made. The answer is no. We need to address two other arguments that we've made, which Judge Lampart did not address in his decision. It's still a bit more complicated because the Constitution does say which branches get to decide whether money comes out of the treasury or property held by the United States comes out of its hands. And the one branch that doesn't get to do that is the courts, right, in that first instance. It feels to me that this doctrine is not on the same level as equitable enlargement. I think this court certainly has the constitutional authority and obligation to decide what the statute means. And that's what we're asking the court to do. And we would say that given the fact that so much of the United States' position rests on the fact that the statute does not apply when we possess property that's owned by Iran. It only applies when other people possess property that's owned by Iran. And the definition clearly shows that that's not true. The United States—it applies when the United States has seized property. Clearly, the United States has seized—has put that in possession of property that it has seized. And under the statute, that property shall be subject to execution. Frozen and seized—it wouldn't apply to the frozen part of the statute. That's fair of you. And seized is not defined in the statute. And you're also in a world where you're going to be incorporating a lot of state law processes for these writs. So isn't that at least some ambiguity as to what happened here? I don't see, in your eyes, at the federal level, any ambiguity in the seized portion of it. Certainly, the United States has never offered a definition. I'm aware of no definition of assets seized by the United States that would somehow apply to assets that the United States does not possess. I disagree that there's any basis— Vinny, I'm sorry. This is not my expertise at all. Is it formally seized that is possessed by the United States until Judge Friedman says it's Iranian? Or is that kind of an escrow-like holding? I'll take away the technicalities of escrow. But is it sort of a limbo holding or tentative holding until Judge Friedman says this is Iranian? Under the statute, it sounds like it can't be formally seized and possessed unless we know it's from a terrorist party. Well, I don't know. And you're right. Seized is not defined in the statute. I don't necessarily know that Congress intended seized in Trita to be wholly subsumed within a seizure for purposes of civil forfeiture. The executive branch, I think, clearly under IEFA has the authority to seize property in situations where the United States might not be seeking formal forfeiture of it. And I think any dictionary definition of seizure would require the United States to take possession of the property. So there's a lot of seizures, and we hear about them nowadays with respect to property of individual Russians that are seized. But then there's whole proceedings that come after them that I think are to sort of definitively determine whether they're going to belong to the U.S. or not. I believe under IEFA, and this certainly happens in the frozen asset context, which I'm certainly more familiar with. In the seizure context, I believe under IEFA, the United States does have the ability to indefinitely withhold or indefinitely seize property. But even assuming that that is wrong. Without a court proceeding. Yeah, incorrect. Assuming that's wrong. Seizure is an action. It can't be indefinitely seized. I don't know if that's true. Maybe there's some peculiar statutory concept to this, but ordinarily a seizure is an event. With respect to the freezing of assets, assets have been frozen indefinitely for decades. I don't know if they're frozen or blocked or whatever. After they were seized, right. Correct. I don't think so. Assuming they're wrong. And let's say if the United States under IEFA, if they seize an asset that's right within the end of the TRIA, even if the United States then has some clock that starts, they need to judicially recognize the seizure such that it becomes the United States property. During the period of time when that clock is running, the property would be subject to TRIA and our clients like mine would be able to come in and try to judicially. That may be the point then. There would be no point to the statute if the seizure in and of itself made the property no longer a ring. Exactly. Well, then it gives you at least the standing to go into the forfeiture action. I'm sorry? Seeking the writ at least gives you the standing to go into the forfeiture action. Seeking the writ gives us an additional argument for standing in the forfeiture action. I'm not, I'm still not satisfied about this thing. Because your analogy, I think, falters because the court there didn't talk about the meaning of provision of law at all. And the case would do exactly the same even if there had not been no provision of law or any provision of law notwithstanding had not been in the background, right? The court recently just said 30 days. That means 30 days. That would be the notwithstanding clause. In a scenario where the statute did not include the notwithstanding clause, the court certainly could have looked at it and said, for whatever reason, we don't believe that, we believe that 30 days is mandatory. It's not subject to equitable enlargement. What the court in Kane did do was it looked at the notwithstanding clause and it said, we research inclusion based on the clear and emphatic language of the statutory provision at issue. And then it went on to talk about some other comparable statutes that did not include the notwithstanding clause and held that, I believe it was saying in those cases, equitable enlargement was permitted. And what the court said there, and this is on, looking forward, page 277 of the decision, comparing the two statutes, where the language of the provision is as dramatically different as in these two statutes, we are duty bound to examine the plain meaning of each separately. As is evidenced by the different periods of time for seeking judicial review that Congress never intended that these statutes be identical in all procedural respects. So, again, relying on the fact that this statute, the plain meaning of the statute that was actually reported contained the notwithstanding clause, it treated that statute differently than the other statutes. And so, in a counterfactual world where this statute did not include that clause, the court could have rested its decision on other grounds, but it rested its decision on the notwithstanding clause in this case. Now, I see your point. I don't think that the case nails it down. It's your application of the case that I think is not compelled. I understand it. I don't think it's compelled by what's in the case, but I'll take another look at what's in the case. I'm sorry, you're a little less compelled. Your conclusion. But I will look again at 277 to see whether there's more than that. If I may, just to respond very briefly to that, the sentence that we've been focusing on, we reach our conclusion based on the clear and emphatic language of the statutory provision at issue by providing that notwithstanding any other provision of law. And then it goes on to list 30 days. I don't think there's any reasonable reading of this case that would suggest that the court was not relying on the notwithstanding clause. What have you said? Remind me about the doctrine, I guess we would say, by which the first court takes possession of the issue. I think there are a number of responses. One, the doctrine is exclusively being applied in scenarios where different courts either... That doesn't move me. Fair enough. If you agree that the notwithstanding clause... Don't we refer to the individual judges of the district court routinely as a court? Sometimes you do, sometimes not. Sometimes the court is a body. I certainly don't dispute that individual judges are referred to as a court. I think the issue is the concept of one district judge taking exclusive jurisdiction over property to be exclusive of other judges within the same district. We think the doctrine kind of breaks apart, but fair enough. If Your Honor's not moved on... I can move on. I think if the court agrees with me, with our position that provision of law encompasses common law doctrines, which we obviously are in support of you, prior exclusive jurisdiction doctrine would also be overridden by the treaty of notwithstanding clause. This does not have the same, I don't think, constitutional concerns that Your Honor raised. And then, again, talking about the posture here, we have not actually sought to enforce our writ yet. We have decided to go through this gating question first, to resolve this gating question first, and I think there would be plenty of opportunities if the court were to vacate Judge Leinfarth's decision and send this back down, where we could work out a scenario where we enforce our writs, but short of vacating them now at this very early stage. We could go in front of Judge Friedman and ask Judge Friedman to enforce the writs, either by filing a notice of claim in the forecourt direction or by formally seeking to transfer the case to Judge Friedman. There's no need for the court to vacate our writs, cut them off entirely, and have us start all over again, which raises a number of concerns in terms of our ability to fully get the benefit of the writs that we've gotten. So I don't think this is a scenario where the prior exclusive jurisdiction doctrine really is impacting Judge Friedman at all. And I think he would be the best person to say whether his jurisdiction is impacted or not. Let's lay out the effect earlier. You're coming into court with a piece of paper that says that Iran owns the assets, determined by another court, and they're on a potentially collision course, which he says they don't. That determination certainly would not be binding on Judge Friedman. It was made ex parte in front of Judge Lambert. And would Judge Friedman's position be binding on Judge Lambert? Yeah, it would be binding on you for purposes of your writs. If Judge Friedman were to determine that the property was not Iranian, and we... Are you then in a position before Judge Lambert to prove the opposite? Well, if we remained in front of Judge Lambert and Judge Friedman determined that the property was not Iranian or was not subject to forfeiture for some other means, I don't know that that would necessarily bind us. But there's still been no attempt at this point in time by Judge Lambert to interfere with the property that was in front of Judge Friedman, other than to issue the writs. We haven't sought to enforce those writs. But you're not sure that Judge Lambert would be bounded by anything Judge Friedman has determined? I'm sorry. I understand. I'm sorry. I understood you just said that Judge Lambert would not necessarily be bound by anything Judge Friedman determines. Just as judges within the same court are not bound by a decision that might be... So we are on a potential... They are on a potential collision course. They are on a... And in the future, we have two appeals coming up from divergent judgments. They are on a potential collision course, but respectfully, that collision course has numerous offerings. I understand that. I think the purpose of the prior jurisdiction is to avoid that possibility, right? It's a rule of right and reason, and when the reason isn't applicable, the rule doesn't apply. Well, you just said that we could have here two conflicting judgments from two different district judges, which is avoided under the rule. What the rule prohibits is one court or, in this scenario, one judge interfering with another judge's exclusive jurisdiction over the property. Unless and until Judge Lambert, at our assistance, attempts to enforce the risks that have been issued, there is no interference with Judge Friedman's property. So my point is that if we go back down, we would have multiple opportunities to figure out how the rest of the litigation will develop, at which point in time, if the United States believes that we are trying to inappropriately interfere with Judge Friedman's jurisdiction, could raise the prior exclusive jurisdiction doctrine at that point. There is no attempt yet to interfere with that property. You said you had agreed earlier that Judge Friedman's decision, which would be made on a full record, would control and would displace this ex parte determination by Judge Lambert. I believe in that hypothetical that we were talking about was a scenario where we'd go back down and went to Judge Friedman to enforce our risk. So why would you want to go to Judge Friedman? If we rule for you, you're best to stay out. If you go to Judge Friedman, then you're going to be stuck with his decision, whereas if you stay out of that action, you're standing there in hand. Respectfully, we didn't do so well in front of Judge Lambert either, so I don't know that we would be... You're not going to be anywhere. You're just going to stand there holding your wits. You don't have further litigation to do. We need to enforce it. We need judicial enforcement in our room. We would need to go in front of Judge Lambert or Judge Friedman. Does the law say which court you have to go to for enforcement when there's a pending forfeiture action? I think there would eventually come a point in time during the enforcement of the risk where in order to steer clear of the prior exclusive jurisdiction doctrine, assuming the notwithstanding clause doesn't override it, which you say it does, we would need to go to Judge Friedman to enforce the risk. Really? Judge Lambert is just rich of attachment, and you don't go to Chief Crawfordy? You go over to another court instead? We need to make a motion to transfer the case to Judge Friedman. There was a case a year or so ago, I believe it was the Owens case, where prior to the motion being resolved, there was a decision to transfer the case to the judge who was overseeing the forfeiture action. And certainly if this panel were to make a requirement that we formally move to transfer the case to Judge Friedman in the event that there's a reversal, we would be open to that. So your view is that at the end of the day, enforcement of this writ would have to be by Judge Friedman? Assuming the notwithstanding clause does not override the prior exclusive jurisdiction doctrine, our position is that... I thought you just said at some point you were going to have to go to Judge Friedman. If your theory is that the notwithstanding clause overrides that doctrine, you would never have to go to Judge Friedman. If the notwithstanding clause overrides the doctrine, we would not necessarily need to go to Judge Friedman. Too many qualifiers in there. Is it your view that if your writs are reinstated here, you don't have to go to Judge Friedman at any point? Because the prior exclusive jurisdiction doctrine is going to be overridden by the notwithstanding clause. And so you've got your writs of attachment, and you need nothing more other than to ask Judge Lambert to enforce them. As a legal matter, that is our position. As a practical matter, we are willing to go to Judge Friedman in order to preserve our writs. So if this panel were to make that a requirement... Well, how can we make it a requirement without ruling on your argument, which isn't brief to us, that the notwithstanding clause does or does not override the prior... The panel certainly has the option, Judge Lambert did not decide this question, to vacate the specific question he did decide about sovereign immunity, and then have Judge Lambert decide whether the prior exclusive jurisdiction doctrine applies to others separately make the writs. On what ground would we... If the notwithstanding clause is enough to override something constitutionally rooted like sovereign immunity, on what legal basis could we conclude at the same time that it doesn't override this prior jurisdiction argument? Is there any basis for doing that? If that's the path the court takes, then I would agree that the prior exclusive jurisdiction doctrine would likewise be overridden. So then we wouldn't have the ability to say... Please just make our lives easier by going to Judge Friedman. Fair enough. What I was referring to is obviously we rely on a few different provisions of TREA, and so there is a world where the court were to say, well, we're not going to reach the notwithstanding clause issue just yet, because we think the definition of locked assets is clear, and so then there would not be a finding as to the notwithstanding clause, and we would go back down, and that could be a question that would be open for Judge Lampard. And quite candidly, we might decide to move this issue to just request a transfer to Judge Friedman. We have no preference, for lack of a better word, over who ultimately decides whether the writs should be enforced. We just want the writs that we obtain to remain valid so that we can go and enforce them somewhere. Well, could you just move this dispute without our decision to Judge Friedman and ask him in the forfeiture action to issue writs of attachment? We theoretically could. There's a priority concern about that in the interim time between going to Judge Friedman and trying to get the writs reissued and reserved that someone else could step in front of us, and so that would be a concern about doing that. There's nothing to stop you from doing that today. He doesn't move this out, at least, right? He wouldn't move this out until he would act on it. I'm sorry? He wouldn't move this out until he would act on it, and I don't know how he could issue writs until he decides the proper issue. Writs are typically issued at a very early stage in a case prior to a party who is then subject to the writs to raise whatever defenses they might have. No, there might be. I don't think you would need to— I don't think there's anything typical about this case. I'm sorry? It doesn't seem much of anything typical about this case. You know, I'm involved in a lot of these cases. There's really nothing typical in any of them. Right. You know, it's trying to, you know—I'll leave it at that. Well, no doubt for worthy clients. Any other questions? Thank you very much. This kept you up a long time. Do they aim to the plaintiffs? I'm sorry, but I'm just trying to sort these things out. Sure, sure. The United States is an intervener below in the— No, I got that one. Let me be brief. Do the plaintiffs need a writ of attachment to be able to intervene in the forfeiture action before judgment? So they do not need a writ of attachment to file a claim in the forfeiture proceeding. We would argue that to maintain their claim in the forfeiture proceeding, they have to have a specific property interest in the property sought to be forfeited. So if you're an unsecured creditor, you file a claim, you're going to be subject to dismissal on that claim because you do not have an identified property interest in the land property that is being sought to be forfeited. Without a writ of attachment under the law of this court, they would not have standing as a jurisdictional condition. So you're saying they can file a motion that will be immediately dismissed? That's correct. And you don't believe that the Terrorism Risk Insurance Act gives them statutory interest in the disposition of that property? That's correct, Your Honor. And I just want to clear up perhaps some definitions of what is a block asset under TREA, first of all. Under 201D2, it's not all property frozen or seized by the United States. It's very specific. It's property frozen or seized by the United States under Section 5B of the Trading with the Enemy Act. We can put that to the side. Currently, that act only applies to interest of SCUPA. The other provision that it can be seized or frozen under to be a block asset is under Section 202 and 203 of the International Emergency Economic Powers Act, or IEPA. It's also stated in this case that the funds and the cargo here were not seized under IEPA. The United States applied to the magistrate judge for a seizure warrant under the Civil Forfeiture Statute and served that Civil Forfeiture seizure warrant on the operators of the Aquileas while it was in international waters. The only possible hope for this asset to be a frozen asset under IEPA is when it entered the territorial waters of the United States before the oil was pumped off in the U.S. Because IEPA only applies property within the jurisdiction of the United States. The way that that's been interpreted through executive orders and OFAC regulations is that the property has to either be in the hands of a U.S. person or it has to be in the United States. So the only time that IEPA applies to Iranian source or Iranian property is when it's actually in the United States or in the hands of U.S. persons. Well, that would seem to apply to the bank account where the proceeds of the sale is. Correct. So you would have to find that the United States government is a U.S. person under IEPA for it to need to be frozen. But let's assume that when they serve their risk of attachment, which was right around the time the U.S. was pumping off the oil after it identified it, after it was away and were cut. So they didn't serve it until after it was sold. That was the agreement you had, wasn't it? That was the agreement. They attempted, they reached out to us right as we were pumping the oil. So they didn't serve them until it was sold. That's correct. Until it was money, property in the United States. That's correct, Your Honor. Why does an IEPA apply to that? Because it's not frozen under IEPA because the United States had a license under IEPA to dispose of it. So it wasn't frozen and that's the holding of R.J. O'Brien, that's from other circuits, that's the holding of Julian. What is its status then for purposes of the Forfeiture Act? It is seized by the United States under Forfeiture. It's seized but not frozen. I got that it's seized but not frozen. But why doesn't IEPA apply to seized assets? We didn't seize it under IEPA. The only provision of IEPA that allows for seizure of property is when the United States is in armed conflict with another nation. Under IEPA 50-1702C, when the United States is engaged in armed hostilities or has been attacked by a foreign country or foreign national to make confiscate any property. That's the seizure part of IEPA that TRIO refers to. When it is seized under IEPA, the only time the United States seizes property under IEPA is when we're engaged in armed hostilities with another nation. Otherwise, we have to go through another process because the process concerns that there would be a judicial involvement in the seizure of property. This is a forfeiture statute and its provisions regarding the ability for the United States to seize the assets of a terrorist organization or assets which afford a person a source of influence over a terrorist organization. What is the basis for the United States' seizure of this property? If it's going through the civil forfeiture action, these funds are going through that. Are they U.S. property yet or not? They are in the possession of the United States government. Don't ask. I didn't take possession of nine-tenths of the law, but I'm asking about the one-tenth here. Is it the property of the United States? So is it, for you, the property of the United States before a final order of forfeiture? No. Is it burdened property of the United States, legally burdened property of the United States? So, I mean, it's hard to answer that question with a great yes or no, so let me do the best I can. The United States has a possessory property interest in the property once it is seized. The United States has a continuing future interest in the forfeiture of that property. Is it a property interest or is it simply a legal claim to the property? It's a property interest, as I understand the law you're on, and it's a contingent property interest that springs into light once we have a final order of forfeiture, and it goes back to the date of when the unlawful act occurred. If you get, if you, if. Right. But I guess I'm trying to figure out what the basis for a claim of sovereign immunity is. If you don't, it's not something the United States owns now. It just has a legal claim to. Sure. And I think the court addressed this question in the calendar case, where it said a sitting and claiming non of the United States' sovereign immunity in the context of selection proceedings is when it has possession. There's a reason why when the United States takes possession of something, these laws are different. The United States has this, and this rig has been directed to the United States, not to the bank, not to a holder of the property. So. Do you have the ability to turn it over if you don't yet? I mean, like, strip everything away. And so you guys have this nice bank account that you possess, at least, or that you have a hold of, but you don't yet know if it's your property, but it's in your possession. And they serve a writ of attachment on you. Do you even have the legal power to hand it over to someone at this point? Because it's not yet. You don't have a title to it. It's not your property. So this is the problem that raises the non-abstaining interpretation advanced by claims here. Raises. We have an order of conduct agreement that the marshal service is directed to hold that property until he issues a final order. Is the marshal service that's holding that property right now? Correct. So you don't even hold it right now. You don't own it, and you don't hold it. The U.S. Security Office doesn't hold it right now. The U.S. Marshal Service is part of the federal government, part of the Department of Justice. So the United States, a United States component of the federal government, holds it. It's a sovereign immunity that's at play. It's a sovereign immunity at play because I'm just asking the legal question, could that writ even be responded to in the sense that could the marshals, they have this interest that they have, this contingent interest, sufficient to allow them to even respond to a writ of attachment? So this is where the non-abstaining clause, if there were multiple, in the terms of legal problems, if there were multiple judges, even the same courthouse, issuing orders about what should and should not be done with this property, then that's a real problem. We're under a four-person judge agreement in the four-office direction. Could that be maintained by the marshal service? What I'm trying to ask is exactly what that means. I assume it means that it couldn't be handed over. We would be violating Judge Friedman's order, Judge Lambert's order. Would you also be violating federal law? Is there a statute or regulation that would be violating it? I think we would probably be violating the, I would have to look into it, Your Honor. I'm assuming there's a provision of 18 U.S.C. 983, which provides the procedures or supplemental rules, the federal rules of civil procedure, which governs civil court official proceedings. That's not agreed in this case. But certainly we would, if Judge Lambert directs us to turn the property over to the plaintiffs, we would be in violation of Judge Friedman's order to hold it until he issues a final order in the court official proceeding. That just seems different from saying you have a sovereign immunity defense to their action. I thought it would just be, what are you bothering us for? We don't have any authority to do anything with this property right now. Well, Your Honor, I think, again, the problem I'm addressing concerns a legal problem, and I kind of moved into there, because you're going to have inconsistent judgments regarding this property. I get the problem of inconsistent judgments, but that doesn't show that you've got the sovereign immunities implicated, because you don't own this thing. You've just got the marshals following court order here. Marshals follow court orders all the time. It doesn't mean anything they touch or are holding becomes United States property for purposes of sovereign immunity. I mean, courts order marshals to do things with property all the time. They've got sovereign immunity implications. Right. It's not a federal party seeking to attack property that is in the possession of the United States, and I would refer to it as counter-property. It sounds like it's in the possession of the court, not the United States. I mean, we're talking about the United States, but this branch of the United States. The U.S. Marshals Service is part of the Department of Justice and part of the executive branch of the United States. Anyway, it sounds like it's in the control of the – if anyone controls this property right now, it's the court,  I would say that that's correct. We're not going to be moving it anywhere out of the Marshals Service's custody. It has some court order from Judge Friedman. But, again, I would refer, of course, to the calendar case. This is a very similar mathematical pattern. The United States held money in escrow for potential other beneficiaries. And even in that case, this court said, no, you can't serve ransom detachment. You can't collect against the United States when it is holding property even if it belongs to other people. On sovereign immunity grounds. On sovereign immunity grounds. We go through several of those cases in our brief, Your Honor, where, again, the key to putting on of the United States' sovereign immunity in collection proceedings is when it possesses the property. And that's the reason why we articulated this distinction. Because the property here is not seized under AIPA, we don't have to concern ourselves with that. The only argument that we could possibly get out of the TRIA is that it's frozen. At the only time that AIPA was required for this asset at all, the United States had a OFAC license in hand, authorizing it to seize, forfeit, and conduct the activities that it has been conducting with this takeover of petroleum. Would you say it wasn't one of the OFAC licenses referenced in the TRIA statute? Well, I think at the time it wasn't one of the – the license wasn't issued under one of the statute's reference in TRIA. Is that correct? Right. So I think the exception to the exception, as my friend put it, is they're misreading it. The exception that he refers to, 201D2B, applies when property continues to be frozen under AIPA. But there is another blocking regime that someone has obtained a license for. And so what it's saying is that this may still be covered under AIPA, but because you have this overlapping blocking regime and you've got a license there, that's going to be good enough to put it outside of the prospect of TRIA. It doesn't talk about when you have a license under AIPA at all. And the decisions from – the sister circuits in Holy Land and in R.J. O'Brien say – I'm being simple here, but if it was in, the license doesn't take it out unless the license was specifically required by AIPA or the United Nations Participation Act or diplomatic relations. Right. So none of those three apply here, right? We believe that they do apply. Which one applies? No, we've not said the diplomatic relations. I don't know what the United Nations Participation Act is, but I assume that doesn't apply. Well, if you're – Was this license required by AIPA? It's our position out of respect for our sister – I'm just asking you a statutory question here, not your positions and comedies and things like that. Was this license required by AIPA? This license, in my mind, was required by AIPA, yes. In your mind? It's the government's position that it was required by AIPA. That's what we got from our sister agency, OPEC, to authorize the portraits or activities of the United States and those working under its direction. Okay. Why was it required by AIPA for you to have this license? Because then we would have had persons, including U.S. persons, making preparations for the offloading of the cargo and purchasing the cargo that are U.S. persons that would be engaging in property that is Iranian-sourced petroleum, and that is blocked assets once they become into the possession of the United States. Well, AIPA definitely applied to this oil. When it came into U.S. territorial waters. Right. And that's the reason we got a license unblocking it and unfreezing it for purposes of our forfeiture procedure, that the only time it could have been frozen, the United States had a license to dispose of it until it wasn't frozen. And, again, I urge the court to read the analysis in Harvey O'Brien and Holy Land. But as far as the D exception here, the D exception here is not saying, well, licenses only under other statutes count. It's saying that even if the property remains frozen under AIPA, you don't have an AIPA license. If you have a license for another regulatory scheme that blocks assets and you're acting pursuant to that, that's going to keep you outside the coverage of TREA, too. Outside what? Outside the coverage of TREA as well. So it's not that the AIPA license is insufficient to unfreeze an asset. It's saying that even if an asset remains frozen under AIPA but unfrozen under overlapping blocking regime, that's going to also keep it outside of the coverage of TREA. Because the whole purpose of TREA is that it provides access to frozen or seized assets under AIPA, not unfrozen assets under AIPA and not assets that have been unfrozen under other sources of law. What? Notwithstanding any other provision of law, that's pretty broad, but it's not a particularly ambiguous language. Lawyer law can get in the way of this. Why shouldn't we just assume that Congress said what it meant and meant what it said? Well, because I think it gives us a statutory backdrop and we can get into that second yard. But also, there was no other provision of law. Notwithstanding any other provision of law. Right. And a provision of law is something that's written in a statute or a regulation. Common law is a provision of law. Qualified immunity, a provision of law under Section 1983? I don't know, Your Honor. All the court decisions, putting meat on the bones of the Sherman Antitrust Act, are those common law? The whole point is that they are brought into part of the statute. They're a source of law, Your Honor. I'm not debating they're a source of law. But whether they're a provision of law? I think any of that phrase, even in the opinion cited by my friends on the other side, the first terrific case that their students were referencing in the argument with my colleague, that was Brown v. United Airlines. Even though there they found that the preemption language of the now-withstanding clause at issue there encompassed common law remedies, it said it's in fact, and we have to look through the entire statutory makeup to resolve the ambiguity. The United States provision of the Qualified Immunity Doctrine under Section 1983, which is there because Congress said, we assume Congress carried this forward in the statute itself. Because it was a common law backdrop. But that doesn't just mean we get to keep applying common law any time we want. The whole theory for it is that the common law is brought into the statute. Right? We're doing a form of statutory construction. That's what those decisions were. So if we construe common law to be part of the statute, why doesn't that make it as much a provision of law as the rest of the statute? In the specific context that Section 1983 doesn't apply to the United States, I want to be careful. I know, but I'm just, okay. It's like the Sherman-Amy Trostag, same thing. There's plenty of time. It's a general maxim. We assume Congress legislated against the backdrop of common law. And we don't do that to say, so we get to rewrite the statute. We do it to say, that's what the statute says and means. Yes, Your Honor. And I think, actually, that Section 1983 is a good analogy here. 42 U.S.C. 1983 is undisputably a provision of law. It's written in the statute. The federal counterpart bippings, is that a provisional law or is that a judicial common law? No, that one's not a statute. I mean, if you notice, that's not a statute. I don't think that's an interesting question, frankly. But I'm going to have to use a different one. And that is, I just don't understand this whole argument that we can somehow know when common law that's brought into a statute is a provision of that statute or not. That seems to me a, you know, Federal Tort Claims Act. That's something you all deal with. And that incorporates, as a matter of statutory law, the state laws, tort law, which is almost always common law, of every state, whichever state is implicated in the case. Are those tort law provisions, not provisions? Is that incorporated tort law, not a provision of federal law? For purposes of the case? Well, this is the danger of this theory that we're trying to figure out, when common law is, when courts have said, I mean, their Congress said it in the Federal Tort Claims Act. But when courts have said, the common law is brought in as if written into the statute itself. And it seems a bit artificial to say, well, it's written in for purposes of us putting it there, but that it's still not a provision of law. That's the danger. Right, but the common law, I mean, if you're going to say that sovereign immunity is part of common law, it's derived from common law, but I think it is elevated above concepts like equitable polling and things like that that we discussed in Kane. But you didn't argue that in your brief. I've argued it, but you didn't argue it in your brief, that you did not argue that sovereign immunity is constitutionally rooted. Your Honor, we argue that it, unlike other common law documents, cannot be made without a clear and unmistakable waiver. But that's what you're taking the question. Yeah, and what all this discussion reveals is that there's ambiguity in the phrase notwithstanding any other provision of law. And as soon as the court finds it intended to act or ambiguous, it means it's not a waiver, because waivers have to be clear and unmistakable. Any ambiguity needs to be construed in favor of the sovereign. And even if the court finds a waiver for a property seized under IEA, which is not this case, it still has to strictly construe that waiver only to that realm. It does not clearly and unmistakably waive the United States' sovereign. But that argument depends on your argument that common law is not a provision of law. That's all I'm saying. Even if you think the best reading of the statute is that common law is a provision of law and you're going to resolve the ambiguity in that fashion, I think the fact that there is an ambiguity means there is no waiver when it comes to the issue of sovereignty. I'm happy to go through our alternative points, especially the principles. But I think I mentioned that earlier. Unless the court has other questions, we ask that the judge with a different opinion.  Sure. Remind me of a statute in which the Congress has said specifically notwithstanding our sovereign immunity. I'm trying to remember. I definitely have seen them in statutes notwithstanding the United States' sovereign immunity. The decimal I can give is actually in this very contract, in this very subject matter area. 28 U.S.C. 1610G, the Foreign Sovereign Immunity Act. It has a specific phrase that says U.S. sovereign immunity does not apply. And it does not apply to regulated property under IEPA that has been used for a commercial purpose in the United States of a foreign terrorist state. So the problem here is that this property wasn't used in the United States for commercial activity. That's why we're solely in the Freedom and not the Foreign Sovereign Immunity Act. But it was in the express title of 1610G where it references that the United States' sovereign immunity waived. That's very different than what we have in TRIA. Let me take – you just pointed to this exception for property used for a commercial purpose. And where is that to be found? Is that in 201E? No. So the reason that we're only dealing with TRIA here and not the Foreign Sovereign Immunity Act, which has some parallel and overlapping provisions, is because the folks who use the Foreign Sovereign Immunity Act to attach assets is that the property wasn't used for commercial activity in the United States or some commerciality. That's the reason you're not seeing an argument for attachment under the Foreign Sovereign Immunity Act. In this case, you're only seeing TRIA because this property was never used for commercial activity in the United States. The only reason it happened to come to the United States is because the United States is seeking to forfeit it. This calendar case that you've represented, talked about, is that in your brief? Yes, ma'am. Where is that? It's in our brief at pages 15 through 16. For some reason, I didn't see it. I don't know. I missed it. That's it. You pronounced it calendar. Okay. Okay. Calendar. I thought you had a calendar like D-A-L-E-N-D-A-R. Yes, Your Honor. And, again, I just note that one of the holdings of that case was the government need not have an actual interest in the funds in order to oppose it. Okay. And just one other question. If Congress passed a statute that said Party X may seek judicial process against the United States when it holds the property of Party Y, would that be a waiver of sovereign immunity? I think it would be, Your Honor. Oh, okay. Again, depending on the other circumstances of exactly what the language is in the statute. So, we have a line in the statute that says a writ of attachment may issue against property seized by the United States. Why isn't that judicial process – Party X may seek judicial process against the United States when they hold Property Y? That's not the case, Your Honor, because the property wasn't seized under IEFA, and that's the only property. So, if this were seized under IEFA, then there is a waiver of sovereign immunity. I think you – I know that because the person feared it. Well, you just said that language would be enough. Okay. That's exactly what the statute says. On behalf of the United States, I cannot concede that point because it's not clearly presented in the issues before this court. It seems very much to be in their view. There's an argument here about the role of IEFA in this case. But if they're right that TREA applies to this asset, that's something the district court didn't rule on, correct? Didn't rule on this, whether it was a blocked asset or not. It didn't rule on whether it was a blocked asset. I just assumed it was. I just want to be crystal clear. If they're right that TREA does apply here, then what is the argument that the language – you have to knock out other language. If it doesn't seem to qualify a waiver of sovereign immunity that says a writ of attachment can be sought by them, a judicial process can be sought by them against property that is held, seized, but seized is certainly held by the United States. Why is that not enough? So, one, there's no reason in this case that this isn't right. Again, I think they're right. Go ahead. If they're right that TREA applies, it's a blocked asset for purposes of TREA. Right. I understand you have your arguments. So, I'm asking a different question. You assume it's a blocked asset for purposes of TREA Section A. Why is that not a waiver of sovereign immunity that you are subject to a judicial process for holding? You hold it by a private party. Again, given that that's not the facts presented, I think the government would have a much more difficult time coming to this court and saying that's not a waiver of sovereign immunity here because it's not seized under IEA law. And the writ of attachment was issued – Well, then how did the district court make its sovereign immunity decision without answering that question? It seems to me that that question is indispensable to it because if it is a blocked asset, then there is a waiver of sovereign immunity. No, Your Honor, it's seized under IEA. Again, not only does there have to be a waiver, the waiver has to be applicable to this case. If a waiver is not going to be – Did the district court say that it was not seized under IEA? There's been no contention that that would have been seized under IEA. Did the district court say that because there's no waiver of sovereign immunity because this wasn't seized under IEA? That argument wasn't presented because the only argument that was presented was that it was frozen under IEA and not seized under IEA because the only provision of IEA that allows for seizure is compensation during wartime. So it was never applicable to the district court's argument because it was never argued. So your whole argument is simply that the other verb, frozen, is not a waiver of sovereign immunity, but the verb seized would be hard to argue that it isn't. Yes, Your Honor, and the reason for frozen – Why would Congress split sovereign immunity out of that way in a single sentence? Your Honor, I don't know, but what I would point to is the statutory backdrop of the congressional amendment since TRIA. Since TRIA, it provided 1610G in the context of a waiver of sovereign immunity for certain assets under the Foreign Sovereign Immunity Act. And most recently, it created a terrorist victim compensation fund. It ceded it with some money up front. Well, it gives people – that gives parties choices. I don't know how that answers a statutory question about a party that has chosen not to go through the compensation fund and instead to pursue relief. That's a choice that they're given. It would render dead letter the ongoing funding mechanism for the terrorist victim compensation. Why would it do that? Because that funding mechanism is fines and penalties. It's not seizure assets. It's largely funded by the forfeiture activities under the criminal and civil forfeiture of terrorism act. My understanding of the statute is that it's fines and penalties that go in. Is that wrong? So if you prevail in the forfeiture action, the money in this account is going into the victim compensation fund? It is determined by the Department of Justice component without responsibility to be an asset to meet the statutory definition. That's what I'm asking. I'm not sure it meets the statutory definition. Am I wrong? I thought it was penalties and fines. I can't speak to that because it's not within the Department of – it's not within U.S. Attorney's Office to make that determination. Assets very much like this have been found by the money laundering and asset recovery section of the Department of Justice to be within the Victims Act. Assets very much like this, for example, another – Seizures of funds that have an Iranian interest in them. And those have gone to the victim compensation fund? Yes. And again, 75 percent of that goes to the victim compensation fund. If Congress had intended that the ongoing funding mechanism would be thwarted by individual predators racing to the courthouse and attacking assets as soon as the United States filed a forfeiture complaint against them, that would have – Well, I think that's a much – I'm not sure that argument works here. It seems like it's a very complicated one that involves which things go into the compensation fund or not because the compensation fund itself specifically left parties with this option. Use the fund, which so far hasn't been satisfying everybody's claims at all, or pursue litigation, which is itself a risky route to obtain compensation. But unless you're telling me that this – unless you're telling me that this asset, if it becomes your – if the – I'm just going to call it the funds now, the bank account. If you win in the forfeiture action, that 75 percent of that is going to the compensation fund. Unless you can make that representation, I don't think it's fair to say that they're trying to end run anything. It's not clear that they are. I – again, I can't make that representation because I'm not the exact finder on that, but I – It's not fair to say they're trying to end run anything, unless we know that. Your Honor, again, if Congress contemplated that terrorism assets in the United States receiving the forfeiture would be subject to collection activities by independent terrorist victims – That's what TRIA says. It would be not – no, because Congress passed the Victims Act and the Compensation Fund after TRIA, much after TRIA. Did the Victims Compensation Act say we're overturning TRIA? No, Your Honor. Well, Congress thought they could both operate side by side. Right. I just think this argument isn't something we're making right now. If you're reading about a compensation act, funded, it would include this asset. Yes, it does, Your Honor. Any other questions? Thank you very much. I appreciate it. Thank you, Your Honor. Sorry, Mr. Petruccilli, we will give you three minutes. Thank you very much, Your Honor. I want to start off with the license that my friend referred to. I believe he said that the license unfroze the assets under AICA. That language is not included anywhere in the license. The license authorizes certain transactions. It says the transactions described herein are hereby authorized. That's a far cry from saying something is no longer blocked. I don't think that the reading of the exception that my friend offered makes any sense whatsoever. Respectfully, the statute specifically says that a blocked asset is an asset fees imposed by the United States under AICA, but it doesn't include property that is subject to a license specifically required by a statute other than AICA. The actual language would be rendered meaningless if any license somehow removed the property from the amendment of the statute. With respect to 1610G, the example that my friend gave of an instance where Congress did clearly and unequivocally waive sovereign immunity, what he fails to appreciate is that the statute operates in nearly the exact same way as TRIA. The difference is is that TRIA only applies to property regulated by the United States, whereas Section 1610G applies more broadly to any property that is used for commercial activity, including property regulated by the United States. TRIA, referencing the same two statutes, says if this property is regulated and blocked, it shall be subject to execution and attachment. It functionally is identical. The only difference is that 1610G in its title says United States sovereign immunity inapplicable, which, of course, titles are not dispositive of how a statute works. It's the language. And I would submit to you that if you put them side by side, there is no functional difference between the two. With respect to equating the definition of seizure with compensation, that has certainly never been raised or decided. I don't have a position on it one way or the other. But I think what it makes crystal clear is that assuming the United States is right and TRIA applies to property that the United States has compensated, it clearly applies to property that the United States compensates. And, therefore, there must have been a waiver of sovereign immunity as to those assets, and there is no basis, none whatsoever, in the statute. Are you arguing that frozen and seized mean the same thing? I'm not arguing that frozen and seized mean the same thing, but I'm arguing that there's no basis in the statute to split, I think as Your Honor used it, applying TRIA to all seized assets and only some frozen assets. The language is any asset seized or frozen by the United States. I believe those two words, seized and frozen, rise and fall together. And seized clearly within possession of the United States, frozen should be interpreted the same way. With respect to the suggestion that we had never claimed that the property was seized under AIVA, I don't believe that's necessarily true. I will refer Your Honors to the SEAL supplemental appendix at JA188, which is the application for a warrant to seize property. And AIVA is one of the statutes listed there. So it was not an issue that was really fully briefed in front of Judge Lamport. We never had to take a position one way or the other, to the best of my recollection. So I would just invite the court to look there. And unless there are any further questions, we would ask that the court vacate the decision below for further proceedings. Any questions? Great. Thank you very much. Thank you very much. I appreciate the help of the counsel with this case. It is submitted.
judges: Millett, Childs, Ginsburg